[Cite as *Jackson v. Jackson*, 2012-Ohio-6074.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | JUDGES: |
| STACIE R. JACKSON | : | W. Scott Gwin, P.J. |
| | : | John W. Wise, J. |
| Plaintiff-Appellant | : | Julie A. Edwards, J. |
| | : | |
| -vs- | : | Case No. 12-CA-11 |
| | : | |
| | : | |
| ADAM R. JACKSON | : | O P I N I O N |
| | | |
| Defendant-Appellee | | |

CHARACTER OF PROCEEDING:      Civil Appeal from Fairfield County
                                                     Court of Common Pleas Case,
                                                     Domestic Relations Division, No.
                                                     10-DR-537

JUDGMENT:                                    Affirmed In Part and Reversed and
                                                     Remanded In Part

DATE OF JUDGMENT ENTRY:        December 20, 2012

APPEARANCES:

For Plaintiff-Appellant                         For Defendant-Appellee

RANDY L. HAPPENEY, ESQ.             MICHAEL D. LOWE, ESQ.
Dagger, Johnston, Miller,                     143 E. Main Street
Ogilvie & Hampson                             McConnelsville, Ohio  43756
144 E. Main Street
P.O. Box 667
Lancaster, Ohio  43130

*Edwards, J.*

{¶1} Plaintiff-appellant, Stacie Jackson, appeals from the January 30, 2012, Judgment Entry/Decree of Divorce issued by the Fairfield County Court of Common Pleas, Domestic Relations Division. Defendant-appellee Adam Jackson has filed a Cross-Appeal.

STATEMENT OF THE FACTS AND CASE

{¶2} Appellant and appellee were married on April 17, 2004. No children were born as issue of such marriage. On September 17, 2010, appellant filed a complaint for divorce against appellee.

{¶3} A hearing on appellant's complaint was held on October 3, 2011. At the hearing, appellant testified that the parties owned a piece of real estate. She testified that she purchased an unimproved lot in 2003 for $52,500.00 before the parties' marriage using a personal check from her personal account. Title to the property was in both parties' names as evidenced by a general warranty deed recorded on January 5, 2004.  Appellant testified that although they were not yet married, the deed was in their joint names so that they could secure financing to build a house based on both their incomes. She testified that she did not intend to give appellee a half interest in the lot as a gift and that none of the money used to purchase the lot was appellee's money.

{¶4} Pursuant to a survivorship deed recorded on January 30, 2008, after the parties' marriage, the property was transferred into appellant's married name. Appellant testified that appellee never reimbursed her for any of the original cost of the lot.

{¶5} Exhibit H, which includes appellant's bank statements from February 2004 through December of 2004, was admitted at trial. Appellant testified that she had

$20,149.19 in her savings account as of March of 2004, and that such money was "seed money" used to pay for things for the house. Transcript at 19. She testified that during construction of the parties' house, she paid for construction items by transferring money from her savings account into her checking account and then writing checks. Appellant testified that all of the circled items included on Exhibit H were expenses for construction of the home that she paid for from funds originating from her savings account. The total of the items was equal to or over $15,351.00. When asked, she testified that all of the amounts circled went into construction of the house. The parties moved into the house in November of 2004 and the house was finished in August of 2005.

{¶6} At the hearing, appellant testified the parties separated on June 18, 2010 after appellee moved out. Other than the mortgage, the parties did not have any joint debts and always had separate bank accounts. Appellant testified that the parties originally borrowed $292,000.00 in order to build the house and that, as of June of 2010, the pay-off on the mortgage was $92,790.00. She further testified that the amount of the pay-off was $82,042.54 as of the hearing.

{¶7} In June of 2011, appellant had the house appraised. The appraised value was $240,000.00. According to appellant, after appellee moved out of the marital house, he contributed nothing while prior to their separation, he paid the mortgage while she paid the insurance and taxes out of her account.

{¶8} On cross-examination, appellant testified that the house was worth less than when it was built. She further testified that she only had one savings account and

that they deposited construction loan proceeds in the account. The following is an excerpt from her testimony on cross-examination:

**{¶9}** "Q. Okay. So again, there were large sums of construction money coming into your checking account?

**{¶10}** "A. Right.

**{¶11}** "Q. So I'm still trying to understand. What exactly are you saying is nonmarital money you put in in this process?

**{¶12}** "A. The - - excuse me. The money that came out of my savings account was paying for construction for the house.

**{¶13}** "Q. Well, you can't say that money went for solely construction, can you?

**{¶14}** "A. I can say I know it went for construction.

**{¶15}** "Q. Well, you were writing multiple - - or you were paying multiple payments on things that weren't construction out of that same account weren't you?

**{¶16}** "A. Yes. I paid for day to day things.

**{¶17}** "Q. Okay.

**{¶18}** "A. However, those savings accounts - -

**{¶19}** "Q. Okay.

**{¶20}** "A. - - always went - -

**{¶21}** "Q. So - -

**{¶22}** "A. - - for construction.

**{¶23}** "Q. - - what are you saying in dollars that you put in construction out of your savings account?

**{¶24}** "A. Anything that came out from the beginning before all of this started.

**{¶25}** "Q. Let me see if I understand this. I show you started at $20,149, and you ended at $4,834. Is that what you're saying?

**{¶26}** "A. Yes. That's around 15,000 was premarital that went into the house.

**{¶27}** "Q. Okay. And you would agree that lots of deposits that weren't your premarital money went into this checking account also - -

**{¶28}** "A. They had - - there was construction loans.

**{¶29}** "Q. Okay.

**{¶30}** "A. However, that seed money went into the house. That's why the checking account was down to 4800 at the end." Transcript at 59-60.

**{¶31}** At the hearing, appellee testified that they had lived separate and apart since June of 2010. He testified that appellant had money to purchase the lot and that he never asked her to put his name on the deed. Appellee was unable to recall who decided to put the lot into both of their names. Appellee agreed with appellant's testimony that the $52,500.00 for the lot, the approximately $15,000.00 in "seed money" and the $292,000.00 mortgage proceeds all went into the house, and estimated that they had spent $450,000.00 constructing the house, including the cost of the lot. Appellee testified that the reason the mortgage balance was so low was because he sometimes made double or triple payments per month during their marriage.

**{¶32}** On cross-examination, appellee testified that since he left the marital home in June of 2010, they had not deposited any personal funds into a joint account. He further testified that since June of 2010, he had not contributed any money towards the house. According to appellee, since June of 2010, he believed that appellant had

paid real estate taxes out of the parties' joint savings account. The account contained $3,000.00 when the parties separated.

**{¶33}** After the hearing, both parties filed proposed findings of fact and conclusions of law. A Judgment Entry/Decree of Divorce was filed on January 30, 2012.

**{¶34}** Appellant now appeals from the Judgment Entry/Decree of Divorce, raising the following assignments of error on appeal:

**{¶35}** "I. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY ADOPTING A DISCOUNTED VALUE ON PLAINTIFF'S PREMARITAL INTEREST IN THE REAL ESTATE, THE VALUE OF THE UNIMPROVED LOT BEING A PREMARITAL ASSET.

**{¶36}** "II. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN NOT FINDING THE *DEFACTO* DATE OF TERMINATION OF MARRIAGE TO BE JUNE 18, 2010, THE DATE OF THE PARTIES' SEPARATION."

**{¶37}** Appellee has filed a Cross-Appeal. In his Cross-Appeal, appellee raises the following assignments of error:

**{¶38}** "I. THE COURT ERRED IN FINDING THAT THE REAL ESTATE LOT UPON WHICH THE MARITAL RESIDENCE WAS CONSTRUCTED WAS PRE-MARITAL/NON-MARITAL AND SEPARATE PROPERTY.

**{¶39}** "II. THE TRIAL COURT ERRIED [SIC] IN AWARDING PLAINTIFF/APPELLANT $15,351.00 [SIC] OF NON-MARITAL CREDIT FROM HER PRE-MARITAL ACCOUNT, AS SAID FUNDS WERE NOT TRACEABLE."

First Assignments of Error in Direct Appeal and Cross-Appeal

{¶40} Appellant, in her first assignment of error, argues that the trial court erred in valuing the unimproved lot, which the trial court found to be a premarital asset. Appellee, in turn, argues that the trial court erred in finding the lot to be appellant's separate premarital property.

{¶41} We review a trial court's classification of property as marital or separate under a manifest weight of the evidence standard and will affirm if the classification is supported by some competent, credible evidence. *Taub v. Taub,* 10th Dist. No. 08AP750, 2009-Ohio-2762, ¶ 15. Valuing property involves factual inquiries and also requires an appellate court to apply a manifest weight of evidence standard of review. *Thomas v. Thomas*, 5th Dist. No. 11CAF090079, 2012-Ohio-2893. An appellate court will not reverse a trial court's valuation if it is supported by some competent, credible evidence. *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

{¶42} Marital property is defined as "[a]ll real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage." R.C. 3105.171(A)(3)(a)(i). " 'Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following: * * * (ii) Any real or personal property or interest in real estate or personal property that was acquired by one spouse prior to the date of the marriage." R.C. 3105.171(A)(6)(a)(ii).

{¶43} In the case sub judice, there was testimony that appellant purchased the unimproved lot for $52,500.00 using a personal check from her personal savings

account prior to the parties' marriage. Appellee testified that the money used to purchase the lot was appellant's money from before the marriage. Appellant testified that the lot was put in both their names so that they could secure financing to build a house on the lot, and that she did not intend to make a gift to appellee by placing their joint names on the deed to the property. Appellee, when asked whose idea it was to put the lot in both their names, could not recall. We find, based on the foregoing, that the trial court's classification of the lot as appellant's separate property was not against the manifest weight of the evidence.

{¶44} Appellant, in her brief, takes issue with the trial court's valuation of the lot, which, as is stated above, she had purchased for $52,500.00. The trial court, in its Judgment Entry, found that the value of the marital real estate was $240,000.00 and that the parties had invested a total of $359,815.00 in the same.[1] The trial court then determined that $240,000.00 was 66.70% of $359,815.00 and applied this 66.70% figure to the $52,500.00 to arrive at a figure of $35,017.50.

{¶45} Appellant notes that the appraisal of the marital property that she had conducted in June of 2011 valued the house and lot together as worth 240,000.00, but indicated that the lot itself was worth $45,000.00. The appraisal was admitted as appellant's Exhibit F. There was no other testimony or evidence as to the value of the lot. We concur with appellant that the trial court's valuation of the lot was not supported by the evidence.

{¶46} Accordingly, while appellee's first assignment of error is overruled, appellant's first assignment of error is sustained.

---

[1] The trial court arrived at such figure by adding $292,000.00 (the amount of the mortgage), $15,315.00 (appellant's "seed money") and $52,500.00 (the cost of the lot).

Appellant's Second Assignment of Error

**{¶47}** Appellant, in her second assignment of error, argues that the trial court erred in not finding that the de facto date of termination of the marriage was June 18, 2010, the date the parties separated.

**{¶48}** R.C. 3105.171(A)(2) provides that, except when the court determines that it would be inequitable, the date of the final hearing is the date of termination of the marriage. *Combs v. Combs,* 5th Dist. No. No.2008CA00169, 2009–Ohio–1683, ¶ 21. Thus, R.C. 3105.171(A)(2) creates a statutory presumption that the proper date for the termination of a marriage, is the date of the final divorce hearing. *Bowen v. Bowen,* 132 Ohio App.3d 616, 630, 725 N.E.2d 1165 (9th Dist. 1999).

**{¶49}** R.C. 3105.171(A)(2) also establishes an alternative date for determining the end of the marriage:

**{¶50}** "(A) As used in this section:

**{¶51}** "(2) 'During the marriage' means whichever of the following is applicable:

**{¶52}** "(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;

**{¶53}** "(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, 'during the marriage' means the period of time between those dates selected and specified by the court."

{¶54} Courts, however, should be reluctant to use a de facto termination of marriage date unless the evidence clearly and bilaterally shows that it is appropriate based on the totality of the circumstances. *Boggs v. Boggs,* 5th Dist. No. 07 CAF 02 0014, 2008–Ohio–1411, ¶ 66, citing *Day v. Day,* 40 Ohio App.3d 155, 158, 532 N.E.2d 201 (10th Dist. 1988); *Stafinsky v. Stafinsky,* 116 Ohio App.3d 781, 689 N.E.2d 112 (11th Dist. 1996); *Schnieder v. Schnieder,* 110 Ohio App.3d 487, 674 N.E.2d 796 (11th Dist. 1996).

{¶55} Generally, the trial court has broad discretion in choosing the appropriate marriage termination date and this decision cannot be disturbed on appeal absent an abuse of discretion. *Boggs, supra.* "The abuse of discretion standard is based upon the principle that a trial court must have the discretion in domestic relations matters to do what is equitable given the facts and circumstances of each case." *Jefferies v. Stanzak,* 135 Ohio App.3d 176, 179, 733 N.E.2d 305 (12th Dist. 1999), citing *Booth v. Booth,* 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). Therefore, in order to find an abuse of discretion there must be a determination that the trial court's judgment is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶56} Appellant, in support of her argument, notes the parties separated on June 18, 2010, that they made no effort to reconcile after such date, that there were no children and no joint debt (except the mortgage) and there were no "complicating factors as to a termination of the parties marriage."

{¶57} The trial court, in its January 30, 2012 Judgment Entry/Decree of Divorce, stated, in relevant part, as follows in determining that the date of filing of the complaint was the date of termination of the parties' marriage:

{¶58} "7. The duration of the marriage is at issue herein. Evidence presented indicates that the parties maintained separate bank accounts during the term of the marriage. The only joint debt is the mortgage payment to which Defendant made no contributions following his last payment on June 19, 2010. The parties earn similar incomes and do not rely on each other for financial support purposes. The complaint for Divorce was filed on September 17, 2010. Therefore, the Court finds that the duration of the parties' marriage shall be from April 17, 2004 until September 17, 2010."

{¶59} We cannot say that the trial court abused its discretion in determining that the parties' marriage terminated on September 17, 2010. The trial court's decision was not arbitrary, unconscionable or unreasonable.

{¶60} Appellant's second assignment of error is, therefore, overruled.

Appellee's Second Assignment of Error on Cross-Appeal

{¶61} Appellee, in his second assignment of error, argues that the trial court erred in awarding appellant $15,315.00 of non-marital credit from her pre-marital account because such funds were not traceable.

{¶62} A trial court has broad discretion in dividing marital assets and liabilities in a divorce action. *Cherry v. Cherry*, 66 Ohio St.2d 348, 421 N.E.2d 1293 (1981). Accordingly, an appellate court is limited to a determination of whether, under the totality of the circumstances, the trial court abused its discretion in dividing the property. *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131, 541 N.E.2d 597, 599 (1989). The term

"abuse of discretion" implies more than just an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, 1142 (1983).

**{¶63}** Ohio Revised Code 3105.171(A)(6)(a) defines separate property as "(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage."

**{¶64}** However, "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable."   R.C. 3105.171(A)(6)(b). Therefore, traceability is central when determining whether separate property has "lost its separate character" after being commingled with marital property. *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300, 1302 (12th Dist. 1994). The party seeking to establish an asset as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property. *Peck* at 734.

**{¶65}** In the case sub judice, appellee specifically challenges the trial court's finding that appellant had sufficiently traced $15,315.00 from her separate savings account into the marital residence and granting appellant credit for the same.

**{¶66}** At the hearing, appellant testified that she had $20,149.19 in her personal savings account as of March 18, 2004, which is prior to the parties' marriage. According to appellant, this was "seed money" used to pay for construction costs. Transcript at 19. Appellant testified that she transferred money out of her personal savings account into checking and then wrote checks to cover various construction expenses for the marital home. Appellant had Exhibit H admitted into evidence, which includes her bank

statements from February of 2004 through December of 2004. She testified that the circled expenses on such statements all went into construction of the marital home. These expenses were equal to or over $15,351.00. Appellant's Exhibit A shows that as of December 29, 2004, the balance in appellant's account was $4,834.00.

**{¶67}** Based on the foregoing, we find that the trial court did not err in finding that appellant had sufficiently traced her $15,315.00. Whether or not appellant's testimony was unreliable was an issue for the trial court as trier of fact. Clearly, the trial court found appellant's testimony, in conjunction with exhibit H, to be credible.

**{¶68}** Appellee's second assignment of error is, therefore, overruled.

**{¶69}** Accordingly, the judgment of the Fairfield County Court of Common Pleas, Domestic Relations Division, is affirmed in part and reversed in part. This matter is remanded to the trial court for further proceedings.


By: Edwards, J.

Gwin, P.J. and

Wise, J. concur

_____

_____

_____

JUDGES

JAE/d1019

[Cite as *Jackson v. Jackson*, 2012-Ohio-6074.]

IN THE COURT OF APPEALS FOR FAIRFIELD COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STACIE R. JACKSON | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| ADAM R. JACKSON | : | |
| | : | |
| Defendant-Appellee | : | CASE NO. 12-CA-11 |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Fairfield County Court of Common Pleas, Domestic Relations Division, is affirmed in part, and reversed and remanded in part. Costs assessed 25% to Stacie R. Jackson and 75% to Adam R. Jackson.

_____

_____

_____

JUDGES