[Cite as *Carlton v. Johnson*, 2016-Ohio-7313.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| PATRICIA CARLTON | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| JUDY JOHNSON | : | Case No. 2016CA00006 |
| | : | |
| Defendant - Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:            Appeal from the Canton Municipal
                                    Court, Case No. 2015 CVF 3812

JUDGMENT:                           Affirmed

DATE OF JUDGMENT:                   October 11, 2016

APPEARANCES:

For Plaintiff-Appellant                 For Defendant-Appellee

DOUGLAS C. BOND                         Judy Johnson, pro se
Morello & Bond, Ltd.                    4525 Grandview, N.E.
700 Courtyard Centre                    Canton, Ohio 44705
116 Cleveland Ave, N.W.
Canton, Ohio 44702

*Baldwin, J.*

{¶1} Plaintiff-appellant Patricia Carlton appeals from the December 9, 2015 Judgment Entry of the Canton Municipal Court finding that plaintiff-appellant had transferred ownership of a parrot named Coco to defendant-appellee Judy Johnson.

STATEMENT OF THE FACTS AND CASE

{¶2} Appellant Patricia Carlton, in April of 1996, purchased a parrot named Coco from the Pet Connection in Alliance, Ohio. She paid approximately $1,400.00 for the parrot and its cage. From 1996 until late May of 2015, appellant occasionally boarded Coco at the Pet Connection or with friends due to health issues or while visiting her daughter. She also had Coco groomed at the Pet Connection.

{¶3} Appellant met appellee Judy Johnson through a mutual friend, Karin Budd. On May 28, 2015, appellant was not feeling well and Budd told her that appellee would watch Coco for her. Appellant claims that she was only boarding Coco with appellee temporarily while she recovered. However, when she went to retrieve Coco on or about June 8, 2015, appellee refused to return Coco to her.

{¶4} Subsequently, on August 5, 2015, appellant filed a replevin action against appellee, seeking the return of Coco. Appellant, in her complaint, also set forth causes of action for conversion, intentional and negligent infliction of emotional distress, and breach of contract. Appellee filed an answer to the complaint on September 1, 2015. Appellee, in her answer, stated that appellant had surrendered Coco to her.

{¶5} Appellant, on October 8, 2015, filed a Motion for Summary Judgment supported by her affidavit. Appellee filed a response to the same on October 20, 2015.

The trial court, pursuant to a Judgment Entry filed on October 30, 2015, denied appellant's Motion for Summary Judgment.

{¶6} A bench trial commenced on December 4, 2015. At the bench trial, appellant testified that on May 28, 2015 she gave appellee permission to watch Coco for a week because she was not well and that she did not like to leave the parrot for more than one week because it stressed him out. According to appellant, she told appellee that she would see her in a week and would keep in touch and appellee indicated that there was no problem. Appellant, along with Karin Budd, took Coco, his carrier, his stand and his cage to appellee's home on May 28, 2015.

{¶7} Appellant testified that she contacted appellee next on June 2, 2015 by phone and that the two talked for approximately 10-15 minutes. When asked if she talked about getting Coco back, appellant testified that she told appellee that she would be in touch soon and planned on picking him up on the weekend. Appellant testified that she called appellee again on June 7, 2015 and told her that she would pick Coco up the next day and that appellee responded that there was no problem. When she went to appellee's home on June 8, 2015, appellee, according to appellant, would not answer the door. Appellant testified that she had called three times and that appellee did not return her calls.

{¶8} Appellant testified that she then filed a police report stating that Coco had been stolen, but that the police told her that it was a civil matter. Appellant, when asked, testified that she was never offered compensation for Coco from appellee, that she never asked appellee for any money, that she did not offer appellee anything to watch Coco and that there was no discussion between the two about appellee being compensated for

watching him. Appellant testified that she and appellee did not have a meeting of the minds and that she believed that appellee would be watching Coco with her permission for approximately a week. Appellant testified that she wanted the parrot back along with her stake, his cage and his stand.

{¶9} On cross-examination, appellant disagreed with appellee's assertion that the two had only met one time. Appellant testified that they had met on other occasions at Budd's and that was how she got to know appellee. Appellant also disagreed with appellee's statement that appellant was unable to take care of Coco anymore and was afraid that she was going to get evicted from her apartment because of all the noise that he made.

{¶10} On cross-examination, appellee testified that she once belonged to a pet rescue group and would go and rescue neglected birds. She testified that when appellant initially brought Coco to her, she told appellant that she could come and visit any time she wanted to. Appellee testified that she was not home when appellant was knocking on her door on June 8, 2015. Appellee further testified that she called the police at such time after her neighbor informed her that appellant was there because appellant had called her four times asking for Coco back and was told not to contact appellee in anyway. Appellee testified that she thought appellant wanted Coco back.

{¶11} Appellee testified that she met appellant only for the second time on May 28, 2015 and that was the first time that they discussed the bird. According to appellee, Karin Budd told her that she was going to get the bird and it was appellee's feeling that appellant was giving Coco to her as a gift. When asked if appellant believed that she was boarding Coco with appellee, appellee testified that that was what appellant thought.

When asked if she had not given the bird back simply because she thought that it was better off with her than with appellant, appellee responded "Absolutely." Transcript at 48.

{¶12} The next witness to testify was Karin Budd. Budd testified that appellant had her call appellee to see if appellee could take Coco. She testified that she took appellee in her car to appellant's house and that after appellant uncovered the bird cage, "[y]ou [appellee] asked her three times, that I know of, are you sure you want this? Are you sure you want to give him to me?" Transcript at 53. According to Budd, appellant "said, yes, I can't take care of him. I'm afraid I'm going to get kicked out of here because he squawks." Transcript at 53. Budd further testified that appellant did not want Coco back until Budd made the mistake of telling appellant that Coco was bonding with appellee. Budd stated that she believed that appellant was jealous. Budd further testified that appellant never said anything to her about boarding Coco.

{¶13} On cross-examination, Budd testified that she was concerned that Coco was being mistreated by appellant and that appellant needed help with the parrot. She testified that when she previously asked appellant if she wanted Budd to call appellee to take the parrot, appellant would respond "No, no. no." Transcript at 60. Budd further testified that she believed that appellant had some emotional problems and was concerned that she could not properly take care of Coco.

{¶14} On redirect, Budd testified that appellant and appellee had only met one time before May 28, 2015. She further testified that she heard appellant say that she was giving appellee Coco because she was unable to take care of him.

{¶15} Appellee later testified during the defense portion of the trial. She testified that appellant had told her to go to the Pet Connection and ask them to sell her a used

cage and that she spent a lot of money on Coco because she thought that he was hers. Appellee testified that Budd was there for the entire transaction and told her that appellant gave Coco to her. Appellee further testified that she could not believe that appellant was giving away a bird that she had had for 21 years but that appellant said that she could not handle him anymore.

{¶16} The trial court, in a Judgment Entry filed on December 9, 2015, found that appellant had transferred ownership of Coco to appellee on May 28, 2015 and that appellant's actions after such date "can best be described as guilty and remorse for having parted with Coco after over 20 years."

{¶17} Appellant now appeals from the trial court's December 9, 2015 Judgment Entry, raising the following assignments of error on appeal:

{¶18} I. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR SUMMARY JUDGMENT AS THE APPELLEE FAILED TO MEET HER BURDEN OF PROOF.

{¶19} III. THE TRIAL COURT DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THE APPELLEE HAS FAILED TO ESTABLISH ANY VALID LEGAL DEFENSE THAT WOULD ALLOW A TRANSFER OF THE PARROT.

{¶20} IV. THE TRIAL COURT ABUSED ITS DISCRETION IN ISSUING A DECISION THAT RELIED ON FINDINGS OF FACT THAT WERE NOT SUPPORTED BY THE RECORD.

I

{¶21} Appellant, in her first assignment of error, argues that the trial court erred in denying appellant's Motion for Summary Judgment because appellee failed to meet her burden of proof.

{¶22} However, we find that any error by the trial court in denying appellant's Motion for Summary Judgment is rendered moot or harmless because the subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of appellee. *Continental Ins. Co. v. Whittington,* 71 Ohio St.3d 150, 1994–Ohio–362, 642 N.E .2d 615, syllabus. *Accord, Aurora Loan Services, LLC v. Sanson–Jones,* 10th Dist. No. 12AP–258, 2012–Ohio–5477, ¶ 19; *Schnipke v. Safe–Turf Installation Group, L.L.C,* 190 Ohio App.3d 89, 2010–Ohio–4173, 940 N.E.2d 993, ¶¶ 15–16 (3d Dist.).

{¶23} In the case sub judice, the factual issues on the issue of the ownership of Coco were resolved by trial on the merits. Any error in denying the motion for summary judgment was rendered harmless.

{¶24} Appellant's first assignment of error is, therefore, overruled.

II, III

{¶25} Appellant, in her second and third assignments of error, challenges the trial court's December 9, 2015 decision finding that "the actions of [appellant] on May 28, 2015 exhibited an intention to transfer ownership of Coco to [appellee]." Appellant argues that the trial court's decision was against the manifest weight of the evidence.

{¶26} In *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, the Ohio Supreme Court clarified the standard of review appellate courts should apply when assessing the manifest weight of the evidence in a civil case. The Ohio Supreme

Court held the standard of review for manifest weight of the evidence for criminal cases stated in *State v. Thompkins,* 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, is also applicable in civil cases. *Eastley,* at ¶ 17–19. A reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Eastley,* at ¶ 20 quoting *Twearson v. Simon,* 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001); *See also Sheet Metal Workers Local Union No. 33 v. Sutton,* 5th Dist  Stark No. 2011CA00262, 2012–Ohio–3549 citing *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley,* at ¶ 19.

**{¶27}** While we utilize the manifest weight of the evidence standard of review to consider the trial court's judgment, we remain cognizant of the trial court judge's role as the fact finder. In a bench trial, it remains that "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

**{¶28}** Appellant filed a replevin action against appellee. "In Ohio, replevin is solely a statutory remedy." *Gregory v. Martin,* 7th Dist. Jefferson No. 15 JE 17, 2016-Ohio-650,

2016 WL 698619, ¶ 20, citing *America Rents v. Crawley,* 77 Ohio App.3d 801, 804, 603 N.E.2d 1079 (10th Dist.1991).

> A replevin suit simply seeks to recover goods from one who wrongfully retains them at the time the suit is filed. Replevin does not even require an 'unlawful taking.' The plaintiff in replevin need only prove that he is entitled to certain property and that the property is in the defendant's possession.

{¶29} *Gregory* at ¶ 20, quoting *Wysocki v. Oberlin Police Dept.,* 9th Dist. Lorain No. 13CA010437, 2014-Ohio-2869, 2014 WL 2957713, ¶ 7, quoting *Wilson v. Jo–Ann Stores, Inc.,* 9th Dist. Summit No. 26154, 2012-Ohio-2748, 2012 WL 2337251, ¶ 11.

{¶30} "An action in replevin is founded upon an unlawful detention, regardless of whether an unlawful taking has occurred. The action 'is strictly a possessory action, and it lies only in behalf of one entitled to possession against one having, at the time the suit is begun, actual or constructive possession and control of the property.' " (Citation omitted.) *Black v. Cleveland* (1978), 58 Ohio App.2d 29, 32, 12 O.O.3d 36, 38, 387 N.E.2d 1388, 1390." *Tewarson v. Simon,* 141 Ohio App.3d 103, 117, 750 N.E.2d 176 (9th Dist.2001).

{¶31} Appellee, in defense of appellant's replevin action, contended that appellant gave Coco to her. An inter vivos gift is characterized by "an immediate, voluntary, and gratuitous transfer of * * * personal property * * * " *Bolles v. Toledo Trust Co.*, 132 Ohio St. 21, 26–27, 4 N.E.2d 917 (1936) , quoting *Flanders v. Blandy* , 45 Ohio St. 108, 113, 12 N.E. 321 (1887). The essential elements of a valid inter vivos gift are "[the donor's]

intention * * * to transfer the title and right of possession * * * to the donee then and there, and * * * a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable * * * with relinquishment of ownership, dominion, and control over it." Id. at paragraph one of the syllabus.

{¶32} In the case sub judice, we find that the trial court's decision was not against the manifest weight of the evidence. At the trial, Karin Budd testified that she heard appellant say on May 28, 2015 that she was giving the bird to appellee because she was unable to take care of him. Budd testified that appellee had asked appellant three times if appellant was sure she wanted to give the bird to appellee and that appellant stated that she could not take care of Coco anymore and was afraid of getting kicked out of her apartment. On such date, as noted by the trial court, "all items associated with Coco's care" were transferred to appellee along with "Coco." Appellee then purchased a new cage and toys for Coco. The trial court, as trier of fact, was in the best position to assess credibility and clearly found that Budd's testimony, which mostly corroborated that of appellee, credible. There was sufficient, competent evidence that Coco was a gift, that the gift was complete, and that appellee accepted the gift unconditionally.

{¶33} We note that appellant, in her third assignment of error, argues that the trial court, in its decision, relied on findings of fact that were not in or supported by the record. Appellant specifically takes issue with the trial court's statement that it had observed "Coco's interaction with both Carlton and Johnson. Coco was clearly more comfortable with Johnson." While we concur that such findings are not supported by the record, we find that such statement was not the basis of the trial court's decision which focused on the events of May 28, 2015. Any such error was, therefore, harmless.

**{¶34}** Appellant's second and third assignments of error are, therefore, overruled.

**{¶35}** Accordingly, the judgment of the Canton Municipal Court is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Delaney, J. concur.