[Cite as *Nethers v. Nethers*, 2018-Ohio-4085.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TRESA LYNN NETHERS | JUDGES: |
| | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. Craig R. Baldwin, J. |
| | Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 18 CA 000005 |
| RANDY JOE NETHERS | |
| | |
| Defendant-Appellant | O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Guernsey County Common Pleas Court, Domestic Relations Division, Case No. 17 DR 20 |
| | |
| JUDGMENT: | October 5, 2018 |
| DATE OF JUDGMENT ENTRY: | Affirmed |
| APPEARANCES: | |

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| D. SCOTT RANKIN | GROSSMAN LAW OFFICES |
| 45 N. Fourth Street | JOHN H. COUSINS IV |
| Zanesville, OH 43701 | ANDREW S. GROSSMAN |
| | 32 W. Hoster Street, Suite 100 |
| | Columbus, OH 43215 |

*Hoffman, P.J.*

{¶1}   Defendant-appellant Randy Joe Nethers ("Husband") appeals the February 8, 2018 Entry entered by the Guernsey County Court of Common Pleas, which overruled his objections to the Magistrate's September 27, 2017 Decision.   Plaintiff-appellee is Tresa Lyn Nethers ("Wife").

## STATEMENT OF THE CASE AND FACTS

{¶2}   Husband and Wife were married on May 29, 1999.  No children were born as issue of the marriage.   The parties separated in November, 2016.   Wife filed a complaint for divorce on January 17, 2017.  Husband filed a timely answer.  The trial court issued a temporary restraining order on January 18, 2017, restraining both parties "from selling, damaging, destroying, removing, encumbering, disposing of" marital assets.

{¶3}   The matter proceeded to final hearing before the magistrate on September 11, 2017.  The dispute centered around four pieces of property:

1). 12205 Marne Road, Newark, Ohio, which Husband purchased prior to the marriage.  The Marne Road property consists of a residence on one acre of land and was appraised at $20,000.

2). 68819 Mount Herman Road, Cambridge, Ohio, which Husband purchased prior to the marriage.  The Mt. Herman Road property consists of 80 acres of land and was appraised at $160,000.

3). 2975 Indian Camp Road, Cambridge, Ohio, which was purchased during the marriage on September 18, 2001.  It consists of two tracts, totaling 80 acres, and a residence.  It was appraised at $180,000.

4). 68435 Boden Road, Cambridge, Ohio, which was purchased during the marriage on January 31, 2014. It consists of 26.891 acres and was appraised at $70,000.

{¶4} On September 10, 2012, Husband and Wife each executed a revocable living trust, known as the Randy J. Nethers Living Trust, and the Tresa L. Nethers Living Trust, respectively. Husband is the settlor and trustee of his trust. Wife is the settlor and trustee of her trust. The initial funding of each trust included an undivided one-half interest in the Marne Road, the Mt. Herman Road, and the Indian Camp Road properties as well as personal property and non-titled equipment. Husband executed warranty deeds on September 10, 2012, transferring an undivided one-half interest in the real properties to Wife as trustee of her trust.

{¶5} Attorney Keith Plummer represented both parties during the preparation and execution of the trusts and deeds. Attorney Plummer testified he explained the trusts and the purpose of the instruments during two meetings with the parties prior to the execution of the documents. Attorney Plummer explained Wife was both the trustee and beneficiary of her trust; therefore, she had total authority and control over the assets of her trust. Likewise, Husband was both the trustee and beneficiary of his trust and had total authority and control over the assets of his trust. Attorney Plummer added Husband and Wife retained control over only the assets contained in his or her trust, and each was free to revoke, terminate, or distribute only the property in his or her trust. Neither party had the authority to make any changes to the other's trust.

{¶6} Attorney Plummer further testified he prepared and notarized the warranty deeds transferring the real properties to each parties' respective trust, and would have

explained to the parties the purpose and legal effect of the deeds. Attorney Plummer opined the parties signed the trusts and deeds knowingly, intelligently, and voluntarily. Attorney Plummer stated it was clear to him both parties wanted a trust because "basically they wanted everything in one spot to keep things out of Probate. Keep them private and that was the tone of the conversations I had with both clients." Tr. of Sept. 11, 2017 Hearing at 13. Wife testified the parties met with Attorney Plummer together. Wife stated Attorney Plummer explained the documents, page by page, and had the parties initial each page prior to signing the instruments. Wife indicated the parties wanted to pool their assets together.

{¶7} With respect to the parties' personal property, Wife explained she left the marital residence with her clothes, a small television, and financial records. Wife compiled a list of the personal property which remained at the marital residence and assigned a value to each item. She assigned the values to many of the items based upon the purchase price as she had the receipts for those items. Wife did not hire an expert to appraise the property. Wife denied Husband's assertion she had the majority of the assets in her possession.

{¶8} On cross-examination, Husband stated he had purchased real estate on four occasions during his life and understood what a deed was. Although Husband acknowledged he signed the deeds transferring one-half interest in the Marne Road, the Mt. Herman Road, and the Indian Camp Road properties to Wife as trustee of her trust, Husband maintained he did not understand what he was signing. Husband admitted he did not read the deeds prior to signing the documents. Husband explained, "I thought the Trust, all this Trust was going to my nephew. That is what I thought a Trust was. I thought

it was going so if something happened to me and her it would go to my nephew." *Id.* at 70. Husband claimed Attorney Plummer did not review each document with him, but conceded he initialed each page.

**{¶9}** Husband testified Wife took 80% of the personal property, and he sold or junked some of the personal property in his possession after the parties separated. Husband testified he "junked" a four wheeler, but did not know the year of the vehicle; sold a Kubota belly mower for $500; sold a Kubota 4800 tractor for $2,000, but refused to provide the name of the buyer until the trial court demanded he do so; sold a Kubota tiller for scrap and received $100; junked a hole digger, brush hog, and excavator, claiming they were vandalized and totaled as a result.

**{¶10}** Via Decision filed September 27, 2017, the magistrate granted the divorce, divided the parties' assets and liabilities, and ordered the parties to revoke their respective trusts to facilitate the division of the assets and liabilities. The magistrate found "a clear reading of the trust documents shows donative intent on the part of Husband to gift an undivided one-half interest in the [Marne Road, Mt. Herman Road, and Indian Camp Road] properties * * * to Wife." Magistrate's Decision at 3.

**{¶11}** Husband filed objections to the magistrate's decision on January 8, 2018. Via Entry filed February 6, 2018, the trial court overruled Husband's objections, finding the magistrate "properly determined the factual issues and appropriately applied the law." February 6, 2018 Entry at 2, unpaginated.

**{¶12}** It is from this judgment entry Husband appeals, raising the following assignments of error:

> I. THE TRIAL COURT ERRED, ABUSED ITS DISCRETION, AND

RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BY ADOPTING THE MAGISTRATE'S DECISION AND REFUSING TO FIND THE MARNE ROAD AND MT. HERMAN ROAD PROPERTIES AND MINERAL RIGHTS TO BE APPELLANT'S SEPARATE PROPERTY.  (R. 53, 67.)

II. THE TRIAL COURT ERRED, ABUSED ITS DISCRETION, AND RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN IDENTIFYING, VALUING, AND DIVIDING HOUSEHOLD GOODS, FURNISHINGS, AND OTHER PERSONAL PROPERTY.  (R. 53, 67.)

I.

{¶13} In his first assignment of error, Husband maintains the trial court erred, abused its discretion, and ruled against the manifest weight of the evidence by adopting the magistrate's decision, and refusing to find the Marne Road, the Mt. Herman Road properties as well as the mineral rights thereto were his separate property.

{¶14}  We review a trial court's classification of property as marital or separate under a manifest weight of the evidence standard and will affirm if the classification is supported by some competent, credible evidence. *Jackson v. Jackson,* 5th Dist. Fairfield No. 12–CA–11, 2012–Ohio–6074, ¶ 41.

{¶15} "It is well-settled that a spouse can change the nature of property, and its designation as separate or marital property, through conduct performed during the marriage." *Rank v. Rank,* 10th Dist. No. 10AP–273, 2010–Ohio–5717, ¶ 11, quoting *Smith v. Smith,* 10th Dist. No. 07AP–717, 2008–Ohio–799, ¶ 14, citing *Moore v. Moore* (1992),

83 Ohio App.3d 75, 77, 613 N.E.2d 1097. The most commonly recognized method for changing the nature of property is through an inter vivos gift of the property from the donor spouse to the donee spouse. *Bell v. Bell,* 2d Dist. No.2002 CA 13, 2002–Ohio–5542, ¶ 15. The essential elements of an inter vivos gift are (1) the intent of the donor to make an immediate gift; (2) delivery of the property to the donee; and (3) acceptance of the gift by the donee. *Carlton v. Johnson,* 5th Dist. Stark App. No 2016CA00006, 2016-Ohio-7313*, Bolles v. Toledo Trust Co.* (1936), 132 Ohio St. 21, 4 N.E.2d 917.

**{¶16}** The key issue in determining the nature of the property "is typically whether the donor spouse had the requisite donative intent to transfer an interest to the donee spouse at the time of the transfer." *Rank*, supra at ¶ 11, citing *Neighbarger v. Neighbarger,* 10th Dist. No. 05AP–651, 2006–Ohio–796, ¶ 26. "Donative intent is established if a transferor intends to transfer a present possessory interest in an asset." *Brate v. Hurt,* 174 Ohio App.3d 101, 880 N.E.2d 980, 2007–Ohio–6571, ¶ 21. The donee spouse has the burden of proving by clear and convincing evidence that the donor spouse made an inter vivos gift. R.C. 3105.171(A)(6)(a)(vii); *Bolles*, supra at paragraph two of the syllabus.

**{¶17}** While the holding of title to property by both spouses is not determinative of whether the property is marital or separate property, R.C. § 3105.171(H) , such evidence may be considered on the issue of whether the property is marital or separate. *Gibson v. Gibson,* 5th Dist. Tusc. App. No. 2006 AP 01 0009, 2007-Ohio-2087, ¶ 78

**{¶18}** Husband argues the trial court conflated estate planning with an inter vivos gift. We disagree.

**{¶19}** Section 16.06 of Wife's trust provides:

> If my marriage to my husband ends by divorce or annulment, my husband shall cease to be a beneficiary under this agreement and shall be treated for the purposes of this agreement as though my husband predeceased me, and if my husband is a Trustee or successor Trustee under this Agreement, my husband shall cease to be a Trustee or successor Trustee under this Agreement.

**{¶20}** Section 16.07 of Wife's trust reads:

> The fact that my husband and I are executing our estate plans concurrently shall not be construed to create any contractual or reciprocal obligation between us.

**{¶21}** Attorney Plummer and Wife testified the parties wanted to pool their assets and avoid probate. Attorney Plummer testified Husband and Wife were present when the trusts were executed. He reviewed the documents, page by page, and the parties initialed each page of his and her individual trust. Wife was both the trustee and beneficiary of her trust, and had total authority and control over the assets of her trust. Likewise, Husband was both the trustee and beneficiary of his trust and had total authority and control over the assets of such. Husband and Wife retained control over only the assets contained in his or her own trust, and each was free to revoke, terminate, or distribute only the property in his or her own trust. Neither party had the authority to make any changes to the other's trust.

**{¶22}** Husband executed the warranty deeds transferring an undivided one-half interest in the real properties in question to each parties' respective trust. Despite Husband's testimony he did not know what he was signing, the documents make clear the trusts were meant to be individual estate planning and the deeds were transferring property to the trusts. Once the trusts were executed and the deeds delivered, Husband relinquished "ownership, dominion and control over" the property given to Wife. By his actions, Husband conveyed a present possessory interest in an undivided one-half interest in his separate property to Wife. The purpose was two-fold: 1) to pool assets, and 2) to avoid probate. While part of the purpose of the transfers was for estate planning, the trial court's determination there was also an intent to make an inter vivos gift in order to "pool" assets is supported by the nature and terms of the trusts.

**{¶23}** Based upon the foregoing, we find the trial court's finding Husband made an inter vivos gift of the property to Wife was not against the manifest weight of the evidence.

**{¶24}** Husband's first assignment of error is overruled.

II

**{¶25}** In his second assignment of error, Husband challenges the trial court's division and valuation of the parties' marital assets.

**{¶26}** In order to make an equitable division of property, the trial court must first determine the value of the marital assets. *Cockerham v. Cockerham,* 5th Dist. Licking No. 16–CA–88, 2017–Ohio–5563, ¶ 21. "Rigid rules to determine value cannot be established, as equity depends on the totality of the circumstances." *Briganti v. Briganti* (1984), 9 Ohio St.3d 220, 221–222, 9 OBR 529, 459 N.E.2d 896. However, in determining

the value of marital property, the trial court must have sufficient evidence to justify and support the figure that it establishes. *McCoy v. McCoy*, 91 Ohio App.3d 570, 575, 632 N.E.2d 1358 (1993). Therefore, "[w]hatever valuation the trial court chooses must be supported by competent, credible evidence." *Id.* at 575.

**{¶27}** Husband contends "the only evidence justifying the massive $146,775 value [the trial court assigned to the marital assets] was [Wife's] own opinion." Brief of Appellant at 12. Husband explains, despite Wife's claim she valued the assets based upon receipts she kept from the original purchases of the items, she refused to provide him with copies of said receipts during discovery. Husband adds there was no expert testimony or documentary evidence to support the values assigned. Husband submits he established, through his own "detailed testimony", $101,000 worth of the assets had been sold or junked, or were in Wife's possession.

**{¶28}** Wife filed her personal property disclosure statement on January 17, 2017. Therein, Wife indicated all of the property was in Husband's possession. Husband filed his personal property disclosure statement on September 8, 2017. Husband's list was identical to Wife's list with respect to the specific items and values assigned to such, however, Husband indicated Wife was in possession of most of the property. At trial, Husband submitted a revised list, which showed the following items as "Sold after separation or disposed as junk":

> Kawasaki 4 wheeler (previously valued by Husband at $2,500, and in Wife's possession)

> Kubota belly mower ($7,000, Wife)

Kubota 48000 tractor ($30,000, Wife)

Kubota tiller ($5,000, Wife)

Hole digger ($4,500, Wife)

Brush hog ($5,000, Wife)

Excavator ($5,000, Wife)

2 Stihl weed eaters ($600, Wife)

**{¶29}** Husband testified he "junked" the Kawasaki four wheeler, although he did not know the age of the vehicle; sold the Kubota belly mower for $500; sold the Kubota 4800 tractor for $2,000, but refused to provide the name of the buyer until the trial court demanded he do so; sold the Kubota tiller for scrap and received $100; junked a hole digger, brush hog, and excavator, claiming they were vandalized and totaled as a result. Husband's testimony was unclear as to who compiled the personal property disclosure statement filed September 8, 2017. However, Husband noted any discrepancies between his two statements were "mistakes". Husband sold or junked this property despite the temporary restraining order which had been issued when the complaint was filed. Although Husband claimed Wife did not provide the receipts for the marital assets in discovery, he did not file a motion to compel the production of said documentation. Wife testified the items sold or disposed as junk were purchased sometime in 2013, and purchased with money the parties received from the oil and gas leases.

**{¶30}** Upon review of the record, we find the trial court's valuation of the personal property is supported by the evidence and the trial court did not abuse its discretion in

dividing the marital assets.  As the trier of fact, the trial court was free to accept or reject any or all of the testimony of the witnesses.  The trial court explicitly found Husband's testimony was not credible.  Magistrate's Decision at 3, para. 20.

{¶31}  Husband's second assignment of error is overruled.

{¶32}  The judgment of the Guernsey County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Baldwin, J.  and

Wise, Earle, J. concur