[Cite as *Picciano v. Picciano*, 2021-Ohio-4603.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| WILLIAM D. PICCIANO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2021 CA 00050 |
| MAUREEN M. PICCIANO | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING: Civil appeal from the Stark County Court of Common Pleas, Domestic Relations Division, Case No 2019DR00952

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: December 29, 2021

APPEARANCES:

For Plaintiff-Appellee

DAVID BUTZ
JAMES WILLIAMS
4775 Munson Street N.W.
Canton, OH 44735

For Defendant-Appellant

KENNETH J. CAHILL
60 South Park Place
Painesville, Oh  44077

*Gwin, P.J.*

{¶1} Appellant appeals the April 7, 2021 divorce decree issued by the Stark County Court of Common Pleas, Domestic Relations Division.

*Facts & Procedural History*

{¶2} Appellant Maureen Picciano ("Wife") and appellee William Picciano ("Husband") were married on May 23, 1981.  Husband filed a complaint for divorce on September 27, 2019.  Wife filed an answer and counterclaim on October 17, 2019.

{¶3} The parties filed motions for temporary orders.  The magistrate issued a judgment entry on November 12, 2019.  The magistrate ordered both parties to return all funds taken from the joint account, and also restrained both parties from withdrawing any further funds from marital accounts, except to pay joint marital bills.  Additionally, the magistrate ordered that, "all forms of income from whatever source must be deposited in the parties' joint checking account within three (3) banking days of receipt of the check, direct deposit, cash, or any other form of income."

{¶4} Husband filed a motion for contempt on April 29, 2020, arguing Wife had not deposited her paycheck into the joint checking account since February of 2020.  Husband filed a second motion for contempt on July 23, 2020.  In the motion, Husband alleged that, even after the first day of trial, Wife continued to fail to deposit her income into the joint checking account.

{¶5} The magistrate held a trial on the complaint on June 3, 2020, September 3, 2020, and September 21, 2020.  Three witnesses testified at the trial:  Husband, Wife, and the parties' son, William Picciano ("Son").

{¶6} Husband is sixty-six years old. He has a heart condition, asthma, and had lumbar fusion surgery two years ago. Wife is sixty-four years old. She stated that she is generally healthy, but has high blood pressure, two benign tumors, and takes anxiety medication.

{¶7} Husband was a respiratory therapist for thirty-three (33) years, but he retired in 2015, pursuant to an agreement between he and Wife. He receives Social Security benefits of $1,054 per month, totaling $14,256 per year. Wife is employed by the State of Ohio Department of Health as a healthcare facility surveyor and makes approximately $90,000 per year. She also earns a Required Minimum Distribution ("RMD") from a rollover IRA from her father. In 2019, she earned $19,869 from the RMD. Wife testified she plans to retire in two years.

{¶8} Husband testified to the parties' standard of living during the marriage, stating he and Wife did what they wanted to when they wanted to, including taking vacations and going on cruises. During the marriage, Wife took care of the financial accounts, wrote the checks, and did the taxes. Husband trusted Wife to handle their financial business until July of 2019 when she took a large sum of money out of their joint account.

{¶9} Husband testified to his spousal support request. He stated he does not have enough money to support himself on his social security check.

{¶10} Each party testified to taking funds out the joint checking account at various points in time. In June of 2019, the parties' checking account and savings account had $31,000 and $83,000 in them. Wife admitted that she took $70,000 out of the joint accounts in July of 2019. Wife testified she gave her sister Cathy Heavner ("Heavner")

the money to make house repairs and that Heavner kept $10,000, and wrote a $60,000 back to Wife. Wife denied attempting to hide the money. Wife did not believe this money was marital money because the funds were inherited from her father. Wife stated she informed Husband she was taking this money out. In September of 2019, Wife made several additional withdrawals from the joint accounts in the amounts of $3,829, $5,300, $7,674, and $500.

{¶11} Husband took a total of $45,000 out of the joint account in September of 2019. He testified that he withdrew the money because Wife had already withdrawn $70,000, and he thought she was trying to clean out the account.

{¶12} Both parties testified about Husband's motion for contempt. Husband confirmed that there was a period of time when Wife would transfer her paycheck into the joint checking account pursuant to the temporary orders. However, this stopped after approximately one month. Wife testified that she deposited her paycheck into the parties' joint account for numerous months. However, Wife admitted that, starting on September 13, 2019, she deposited her paycheck into a bank account solely in her name, and admitted that at least $6,381.82 did not get paid into the joint checking account pursuant to the temporary orders.

{¶13} Much of the testimony at trial centered around whether certain Annuity Contracts are Wife's separate property as an inheritance due to the death of her father in 2015, or whether they are marital property.

{¶14} Wife's father had an account at First Merit Bank. On May 1, 2015, the account had a balance of $250,856.15. Wife stated that on May 1, 2015, $15,000 was withdrawn from the account for a car for Heavner, thus reducing the account to $235,856.

Wife took $15,000 from her father's First Merit account to equal the amount given to her sister, thus leaving a $220,856 balance.  Wife's father passed away on May 6, 2015.

{¶15}   Wife opened account #9353 on May 20, 2015 to handle Father's estate with an initial deposit of $220,856.   On June 26, 2015, $90,000 was withdrawn from #9353, leaving a balance of $130,951.52.   In 2015, Husband withdrew $123,000 from #9353.  In August of 2015, Wife deposited $218,629.83 into account #9353.  These were funds from Father's State Farm Credit Union account.  From the end of 2016 to May of 2018, when American Equity Annuity Contracts #124 and #125 were funded, there were various deposits and withdrawals from #9353, including a $20,000 deposit from the parties' joint checking account, and several deposits of marital funds for items such as refunds, dividend checks, and the sale of a car.  Wife was asked, "income that you earned during this marriage was deposited into this account besides the funds that you received from your father."  She responded, "some, yes."  She was then asked, "okay, so for some deposits within this account marital funds were commingled into the account, correct?" Wife stated, "a small amount."

{¶16}   On May 23, 2018, Wife withdrew $200,000 from #9353 and deposited the funds into the parties' joint checking account #301.  Wife wrote two checks to American Equity, each for $100,000, on May 22, 2018, to fund Annuity Contracts #124 and #125. Both Husband and Wife testified that: they jointly completed the applications for Annuity Contracts #124 and #125 (dated May 22, 2018), and #124 and #125 were funded from checks issued from their joint #301 checking account.  Both Husband and Wife also testified that they purchased annuities #124 and #125 because they wanted to invest with Son, who had recently started selling annuities.

{¶17} Husband testified the money to fund Annuity Contracts #124 and #125 came directly from the parties' joint checking account. Thus, he believes #124 and #125 are marital property, subject to equal division. Husband cited to exhibits dated July 10, 2018, showing that the checks to fund #124 and #125 came directly from the parties' joint checking account. Though Wife testified she wrote the checks out of the joint checking account because it was the only checking account she had, she agreed that the bank could have issued a bank check out of the estate account rather than her depositing the funds into the joint account.

{¶18} As to #124, Wife testified that Husband is the joint owner. She stated, "I'm the owner and he's the joint owner." When asked, "was it your intent to make him a joint owner of this account for this annuity," Wife responded, "Yes." With regards to #125, Wife stated that Husband is the owner of the annuity and she is the joint owner. When counsel for Husband asked Wife if she intended to give Husband a property interest in the annuities, she stated it "was for both of them" for "retirement."

{¶19} Son acknowledged that he sold his parents annuities #124 and #125. He stated it was Husband and Wife's usual practice to purchase assets with a joint division.

{¶20} On November 4, 2020, Wife filed a motion to re-open and request for evidentiary hearing. Wife alleged she had "newly discovered evidence" to establish that the money to fund Annuity Contract #050 was solely from a RMD from Father's IRA. Wife stated this document dated January 8, 2018 was "stuffed away under other documents and personal property."

{¶21} The magistrate issued an order on November 12, 2020, denying Wife's motion to re-open. The magistrate first noted that, during the trial, both parties stipulated

that #050 was marital property subject to an equal division. Further, the magistrate found that there was no "newly discovered" evidence. Rather, "all the documents were within Wife's sole possession and control during the entire case * * * Wife's failure to exercise due diligence in finding documents in her possession is not cause to re-open this matter and schedule further evidentiary hearings."

{¶22} The magistrate issued a detailed decision on November 18, 2020. Initially, the magistrate noted that the, "parties agree[d] to split American Equity Contract #050." The magistrate then reviewed the parties' incomes, vehicles, personal property, bank accounts, real estate, retirement benefits, and debts or liabilities.

{¶23} The magistrate completed a thorough and detailed analysis as to whether American Equity Annuity Contracts #124 and #125 were marital property or Wife's separate property. With regards to the $200,000 withdrawal from #9353 and deposit into #301, the magistrate stated, "the court is unable to ascertain if any of the funds for the $200,000 withdrawal came from deposits of marital money that were made into the account prior to the withdrawal of the money, including the $20,000 of marital money that was deposited into account #9353 the day the $200,000 was withdrawn."

{¶24} The magistrate stated that, despite Wife's testimony that #9353 was created to handle Father's estate, "it is clear from the various transactions that the parties used the account for more than merely an estate account." The magistrate noted Wife's admission that, within the #9353 account, she commingled funds from Father's estate, money owed to Father's estate, fiduciary fees, her income from employment, deposits from the parties' joint account, and funds from the sale of the parties' vehicle. Further, the magistrate noted Husband's withdrawal of $123,000 from #9353 in 2016, that Wife

did not oppose, and which the parties used for various marital expenses. Additionally, the magistrate found that Wife continued to use #9353 for more than an estate account after she withdrew the funds for Annuity Contracts #124 and #125, as evidenced by her deposit of $70,000 withdrawn from the parties' joint account in July of 2019 into #9353.

{¶25} The magistrate also found the following testimony relevant to its determination with regard to #124 and #125: Wife testified upon cross-examination that it was her intent to give Husband a property interest in these annuities and that it was for their "retirement," and Husband and Son's testimony that it was Wife and Husband's usual practice to purchase assets with a joint division, such as National Life Group Annuities #104, #105, and #692. The magistrate found Husband's testimony was credible, and provided a list of reasons as to why Wife was not credible, including: Wife provided false testimony on the first day of trial about her condo lease; Wife provided false testimony about her reasons for taking $70,000 out of joint account #301; Wife provided false testimony about where she deposited her paycheck after the temporary orders were issued; Wife ignored the restraining order issued by the court; Wife was not truthful about jewelry purchases made at Zales and where the funds went; Wife's answers throughout the trial were evasive and she "seemed to gauge nearly all her answers to determine whether or not the answer would appear favorable to her position, rather than simply answering truthfully"; and Wife failed to disclose all of her assets on her sworn property affidavit. The magistrate concluded that #124 and #125 were marital property because Wife failed to trace the funds used to create these accounts and, even if she provided sufficient tracing, the contracts were transmuted into marital property.

{¶26} The magistrate then conducted a detailed analysis of the spousal support factors contained in R.C. 3105.18(C), as follows: (a) Husband's income is $14,256 per year and Wife's income is $109,869 per year; (b) Husband is retired and Wife is a registered nurse employed by the State of Ohio; (c) Husband is 66 years old with numerous health conditions, including cardiac issues. Wife has some health issues, including high blood pressure, benign tumors, and a tear in her hip; (d) neither party is drawing retirement benefits and neither must take required minimum distributions. Wife is the beneficiary of a rollover IRA totaling $441,089.59 from Father where she receives RMD's annually; (e) the length of the marriage is 39 years; (g) the parties had a good standard of living during the marriage; (h) Wife has a bachelor's degree and Husband was a certified respiratory therapist prior to retirement; (i) the parties have no debt, Husband has separate property of $38,000, Wife has separate property of $697,000; (k) Husband does not have the physical ability to return to work; and (n) Husband retired upon agreement of the parties at age 62 in 2015 and his health has steadily declined, Wife has substantial resources available to her, and Wife has only made one spousal support payment pursuant to the temporary orders. The magistrate found that, pursuant to the above-factors, Wife should pay Husband spousal support of $1,200 per month for 216 months. The magistrate did not retain jurisdiction over spousal support.

{¶27} As to Husband's motions for contempt, the magistrate found that Wife admitted she failed to comply with the court's order regarding depositing her paycheck into the joint account. The magistrate found Wife's testimony that she did not deposit her earnings into the joint account because Husband was spending money frivolously to be not well-taken, as there was no evidence to show the expenditures on Husband's credit

cards were anything out of the ordinary, and a review of the statements for these credit cards demonstrates the purchases were for food, medicine, dental bills, phone bill payments, and gas purchases. Further, with regards to Wife's argument that Husband was not harmed by her actions, the magistrate noted that the purpose of the order was so that both parties could see what funds were coming in and what funds were going out for marital expenses. Instead of being able to see this, Husband had to engage legal counsel to discover how much Wife was making and spending. Further, at one point, there was not enough money in the account to pay the marital bills. The magistrate also found it "particularly egregious" because while Wife would not deposit her full paycheck into the account and would only deposit what she deemed was appropriate, she took spending money each week from the joint account. The magistrate found Wife in contempt.

{¶28} The magistrate also found Wife in contempt for spending marital funds on expenses that were not marital expenses, specifically $4,352.36 to secure a condo and $169.52 to pay a Spectrum bill for her condo.

{¶29} On November 20, 2020, Wife filed a motion to set aside the magistrate's decision, again arguing that she recently found additional evidence to show that American Equity Contract #050 is separate property.

{¶30} Wife initially filed objections to the magistrate's decision on December 1, 2020. Wife filed supplemental objections to the magistrate's decision on February 8, 2021. Relevant to this appeal, Wife argued: the magistrate erred in ordering spousal support without retaining jurisdiction to either modify or terminate spousal support; the magistrate erred in finding American Equity Contracts #124 and #125 to be marital

property because they were funded by money Wife inherited from her father; and the magistrate erred in finding her in contempt.

{¶31} The trial court issued a judgment entry on March 9, 2021. The trial court denied Wife's motion to re-open, stating the information was in Wife's possession, she just failed to find it and get it to her attorney; further, Wife stipulated the asset was marital. The trial court ordered Wife to pay $1,200 per month in spousal support to Husband for 216 months, but retained jurisdiction over the award. Further, the trial court found American Equity Contracts #124 and #125 are marital, subject to equal division.

{¶32} The trial court issued a final decree of divorce on April 7, 2021. The trial court approved and adopted the magistrate's decision denying Wife's motion to re-open and approved and adopted the magistrate's decision dated November 18, 2020. However, the trial court specifically retained jurisdiction to modify spousal support. The trial court found Wife in contempt of court and sentenced her to thirty days in jail, but suspended the sentence and permitted Wife to purge the contempt by paying $10,000 in attorney fees.

{¶33} Wife appeals the April 7, 2021 judgment entry of the Stark County Court of Common Pleas, Domestic Relations Division, and assigns the following as error:

{¶34} "I. THE TRIAL COURT ERRED IN HOLDING APPELLANT DID NOT SUFFICIENTLY TRACE $200,000 OF INHERITED FUNDS.

{¶35} "II. THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING APPELLANT TO PAY SPOUSAL SUPPORT FOR A PERIOD OF 216 MONTHS (18 YEARS).

{¶36} "III. THE TRIAL COURT ERRED IN REFUSING TO REOPEN EVIDENCE TO DEMONSTRATE THAT THE AMERICAN EQUITY ANNUITY CONTRACT ENDING IN #050 WAS APPELLANT'S SEPARATE PROPERTY.

{¶37} "IV. THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING APPELLANT IN CONTEMPT OF COURT."

I.

{¶38} In her first assignment of error, Wife argues the trial court committed error in holding that she did not sufficiently trace the $200,000 of inherited funds and that she provided sufficient evidence to prove, by a preponderance of the evidence, that Annuity Contracts #124 and #125 were her separate property.

{¶39} Pursuant to R.C. 3105.171(B), "in divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property, in either case, upon making such a determination the court shall divide the marital and separate property equitably between the spouses, in accordance with this section."

{¶40} The party to a divorce action seeking to establish that an asset or portion of an asset is separate property, rather than marital property, has the burden of proof by a preponderance of evidence. *Zeefe v. Zeefe*, 125 Ohio App.3d 600, 709 N.E.2d 208 (8th Dist. 1998).

{¶41} Wife contends that the sole factor as to whether a commingled asset is separate or marital is traceability pursuant to R.C. 3107.171(A)(6)(b). R.C. 3107.171(A)(6)(b) reads, "the commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(H) also includes the

following provision, "except as otherwise provided in this section, the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property."  R.C. 3105.171(H).

{¶42} However, this Court has specifically determined that the doctrine of transmutation still remains valid, even given the language contained in R.C. 3105.171(A)(6)(b).  *Valentine v. Valentine*, 5th Dist. Ashland No. 95 COA 01120, 1996 WL 72608 (Jan. 10, 1996); *Hildebrand v. Hildebrand*, 5th Dist. Morrow No. 04 CA 13, 2005-Ohio-4149; *Hildebrand v. Hildebrand*, 5th Dist. Morrow No. CA954, 2003-Ohio-3654; *Riley v. Riley*, 5th Dist. Stark No. 2008 CA 00038, 2008-Ohio-6796; *Schroer v. Schroer*, 5th Dist. Richland No. 06CA78, 2007-Ohio-4927.  We concluded the doctrine of transmutation "still exist[s] because transmutation is the act or acts of the one party, original owner, converting separate property into marital property."  *Id.*  Further, "it is undisputed one spouse can make a gift of separate property to another.  The action of placing separate property into a joint and survivorship account *and* facts substantiating a present intention to gift the property to the other can transmute the separate property to marital property."  *Id.*

{¶43}  The factors to consider in determining whether transmutation has occurred include: (1) the expressed intent of the parties, insofar as it can be reliably ascertained; (2) the source of the funds, if any, used to acquire the property; (3) the circumstances surrounding the acquisition of the property; (4) the dates of the marriage, the acquisition of the property, the claimed transmutation, and the breakup of the marriage; (5) the inducement for and/or purpose of the transaction which gives rise to the claimed

transmutation; and (6) the value of the property and its significance to the parties. *Id.*, citing *Kuehn v. Kuehn*, 55 Ohio App.3d 245, 564 N.E.2d 97 (12th Dist. 1988).

**{¶44}** As an appellate court, our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶45}** We find there is competent and credible evidence to support the trial court's determination. First, is the testimony of Wife. Wife testified concerning her intent to make Husband a joint owner of annuities #124 and #125. She specifically intended to make Husband a joint owner of annuity #124 and herself the joint owner with Husband of annuity #125. Wife stated she intended to give "both of them" property interests in the annuities. Additionally, Husband testified annuities #124 and #125 were marital assets, subject to equal division.

**{¶46}** In this case, the annuities were titled in the name of both parties. Further, Wife acknowledged that marital income was commingled with the money to fund annuities #124 and #125. Both Husband and Wife testified that they jointly completed the applications for annuities #124 and #125 and that #124 and #125 were funded from checks issued directly from joint account #301. Further, both Husband and Wife testified that they purchased annuities #124 and #125 because they wanted to invest with Son, who had recently started selling annuities. Wife made the decision to place the money to fund annuities #124 and #125 into the joint account, but specifically kept her other inherited property separate. Husband had access to these funds and continued to deposit and withdraw from the account. Wife never indicated to Husband any intent to keep them

separate. *Valentine v. Valentine*, 5th Dist. Ashland No. 95 COA 01120, 1996 WL 72608 (Jan. 10, 1996). Husband and Son both testified it was the parties' usual practice to purchase assets with a joint division. While none of these factors are necessarily determinative of the status as separate or marital property, collectively, they cooborate the evidence of title, and are competent and credible evidence supporting the lower court's determination. See *Siefert v. Siefert*, 11th Dist. Trumbull No. 2011-T-0103, 2012-Ohio-3037; *Riley v. Riley*, 5th Dist. Stark No. 2008 CA 00038, 2008-Ohio-6796.

{¶47} Wife cites *Hall v. Hall*, 3rd Dist. Hardin No. 6-10-01, 2010-Ohio-4818, in support of her argument. In *Hall*, the Third District held that there was competent and credible evidence to support the magistrate's finding that the Husband sufficiently traced a significant portion of the proceeds from the sale of the marital home to his separate property from his father's inheritance. Unlike in this case, the magistrate in *Hall* found the testimony and evidence showed that the Husband traced the asset to his father's inheritance. In this case, the magistrate and trial court found the testimony and evidence showed that Wife could not trace #124 and #125 to her father's inheritance. Given the standard of review of this Court, and the deference to be given to the trial court's determination about the credibility of the witnesses and weighing the evidence, we find this distinction to be important. Further, the testimony in *Hall* was different from the testimony given this case. In *Hall*, the Wife explicitly admitted at the hearing that there was a certain, significant portion of the proceeds from the marital home that were directly traceable and obtained from Husband's inheritance.

{¶48}  Given the evidence, we cannot say the trial court committed error in finding that annuities #124 and #125 transmuted into marital property.  The magistrate's analysis of the factors was thorough and well-reasoned.

{¶49}  Wife contends that there are no facts to suggest a gift occurred because Husband never testified he received a gift from Wife and that he could not state where the assets came from.  "It is well-settled that a spouse can change the nature of property, through conduct performed during the marriage."  *Nethers v. Nethers*, 5th Dist. Guernsey No. 18 CA 000005, 2018-Ohio-4085.   The most commonly recognized method for changing the nature of the property is through an inter vivos gift.  *Id.*  The essential elements of an inter vivos gift are: (1) the intent of the donor to make an immediate gift; (2) delivery of the property to the done; and (3) acceptance of the gift by the done.  *Cook v. Cook.*, 5th Dis. Delaware No. 18 CAF 09 0072, 2019-Ohio-1961.

{¶50}  In this case, there is no question that Wife delivered the property to Husband when she deposited the money into the joint account and made him joint owner of annuities #124 and #125.   Additionally, Husband's acceptance of the assets is evidenced by his continued use of the funds in the joint account, his signing of the applications for annuities #124 and #125, and his testimony that he believed the annuities were marital property, subject to equal division.  Thus, the key issue in determining the nature of the property "is typically whether the donor spouse had the requisite donative intent to transfer an interest to the donee spouse at the time of transfer."  *Cook v. Cook.*, 5th Dis. Delaware No. 18 CAF 09 0072, 2019-Ohio-1961.  "Donative intent is established if a transferor intends to transfer a present possessory interest in an asset."  *Id.*, quoting *Brate v. Hurt*, 174 Ohio App.3d 101, 880 N.E.2d 980 (12th Dist. Warren 2007).

{¶51} The donee spouse has the burden of proving by clear and convincing evidence that the donor spouse made an inter vivos gift. *Nethers v. Nethers*, 5th Dist. Guernsey No. 18 CA 000005, 2018-Ohio-4085. This Court has held that while holding of title is not determinative of whether the property is marital or separate property, such evidence may be considered on the issue of whether the property is marital or separate. *Cook v. Cook.*, 5th Dis. Delaware No. 18 CAF 09 0072, 2019-Ohio-1961.

{¶52} The issue is whether there is competent and credible evidence in the record to support the trial court's conclusion that Wife acted with the requisite donative intent in transferring ½ interest in the annuities to Husband. We find there is competent and credible evidence to establish Wife's donative intent. *Byrd v. Byrd*, 5th Dist. Stark No. 2013CA00005, 2013-Ohio-4450; *Gearhart v. Gearhart*, 5th Dist. Richland No. 2007CA0026, 2008-Ohio-23.

{¶53} Husband testified annuities #124 and #125 were marital property. The funds came directly from the parties' joint account. Both parties completed the applications for the annuities. Most importantly, Wife testified that it was her intent to give Husband a property interest in these annuities for their retirement. Wife specifically stated that for annuity #124, she is the owner and Husband is the joint owner and she intended to make him a joint owner of #124. As to annuity #125, Wife stated Husband is the owner and she is the joint owner of the annuity. When counsel for Husband asked Wife if she intended to give Husband a property interest in the annuities, she stated it "was for both of them" for "retirement." These facts, taken together, demonstrate Wife possessed the requisite donative intent. By Wife's actions, she conveyed a present possessory interest in an undivided ½ interest in her separate property to Husband. *Nethers v. Nethers*, 5th

Dist. Guernsey No. 18 CA 000005, 2018-Ohio-4085; *Byrd v. Byrd*, 5th Dist. Stark No. 2013CA00005, 2013-Ohio-4450; *Gearhart v. Gearhart*, 5th Dist. Richland No. 2007CA0026, 2008-Ohio-23.

{¶54} The weight to be given to the evidence and credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). We find the trial court did not commit error in finding Wife had the donative intent to give half of annuities #124 and #125 to Husband.

{¶55} Wife's first assignment of error is overruled.

II.

{¶56} In her second assignment of error, Wife contends the trial court abused its discretion by ordering her to pay spousal support for a period of 216 months (18 years).

{¶57} A trial court's decision concerning spousal support may be altered only if it constitutes an abuse of discretion. *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 554 N.E.2d 83 (1990). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). R.C. 3105.18(C)(1) provides that a trial court may award spousal support when it is "appropriate and reasonable." R.C. 3105.18(C)(1) sets forth the factors a trial court must consider in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment, and duration of spousal support.

{¶58}   These factors include: (a) income of the parties, from all sources * * *; (b) the relative earning abilities of the parties; (c) the ages and the physical, mental, and emotional conditions of the parties; (d) the retirement benefits of the parties; (e) the duration of the marriage; * * * (g) the standard of living of the parties established during the marriage; (h) the relative education of the parties; (i) the relative assets and liabilities of the parties; * * * (l) the tax consequences, for each party, of an award of spousal support; * * and (m) any other factor that the court expressly finds to be relevant and equitable.

{¶59}   Trial courts must consider all the factors listed in R.C. 3105.18(C).  We have previously held that a trial court need not acknowledge all evidence relative to each and every factor listed in R.C. 3105.18(C) and we may not assume that the evidence was not considered.  *Hutta v. Hutta*, 177 Ohio App.3d 414, 2008-Ohio-3756, 894 N.E.2d 1282 (5th Dist.).  The trial court need only set forth sufficient detail to enable a reviewing court to determine the appropriateness of the award.  *Id.*, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988).

{¶60}   Wife specifically argues the trial court did not consider her age, health conditions, or physical condition at the trial of trial, and also failed to consider the fact that she only plans to work for two more years.

{¶61}   However, the magistrate considered all the relevant factors of R.C. 3105.18 in determining the amount of spousal support that is appropriate and reasonable.  The magistrate did specifically consider in its analysis Wife's health issues, including high blood pressure, benign tumors, and a tear in her hip.  The weight to be given to the evidence and credibility of the witnesses are issues for the trier of fact.  *State v. Jamison*,

49 Ohio St.3d 182, 552 N.E.2d 180 (1990). Additionally, Wife's age and health conditions are only a few of the factors the trial court could consider in making the determination as to spousal support. *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988). A court must consider all statutory factors when making a spousal support award and not base its determination upon one or two factors taken in isolation. *Id.*

{¶62} Wife also contends the length of the award (18 years) is essentially an indefinite duration given the age of the parties.

{¶63} While permanent spousal support is not mandated in marriages of long duration, this Court has recognized that, generally, marriages lasting over 20 years have been found to sufficient to justify spousal support of an indefinite duration. *Keigley v. Keigley*, 5th Dist. Fairfield No. 15-CA-12, 2016-Ohio-180, *Kraft v. Kraft*, 5th Dist. Fairfield No. 08-CA-0039, 2009-Ohio-5444.

{¶64} In this case, we find the trial court did not abuse its discretion in awarding spousal support to Husband for a period of eighteen (18) years. This was marriage of long duration (39 years). Further, Husband's income is far less than Wife's, Wife has a substantial amount of resources available to her, Husband does not have the physical ability to return to work, Husband has cardiac issues, and the parties agreed that Husband would retire in 2015. Moreover, in this case, the potential burden on Wife of a lengthy spousal support order is ameliorated by the trial court's retention of jurisdiction to review and/or modify the award. *Wharton v. Wharton*, 5th Dist. Fairfield No. 02-CA-83, 2003-Ohio-3857.

{¶65} In this case, it is clear from the record that the magistrate and trial court considered the factors enumerated in R.C. 3105.18 in determining whether spousal

support was appropriate and the amount of spousal support that was appropriate and reasonable.  Wife's second assignment of error is overruled.

III.

**{¶66}**  In her third assignment of error, Wife argues the trial court erred in refusing to re-open evidence and allow her to present evidence that the American Equity Annuity Contract #050 was her separate property.   Specifically, she contends the trial court abused its discretion in failing to allow her to introduce a document to show the #050 contract was funded with a RMD from her Father's IRA account and that document was "under a plethora of other documents brought out in anticipation of litigation."

**{¶67}**  We disagree with Wife.  First, Wife stipulated that Annuity Contract #050 is marital property, subject to equal division. "A stipulation, sometimes used synonymously with "contract," is a voluntary agreement entered into between opposing parties concerning the disposition of some relevant point to avoid the necessity for proof on an issue."  *Ward v. Ward*, 5th Dist. Fairfield Nos. 15-CA-33, 15-CA-53, 2016-Ohio-5178, quoting *Rice v. Rice*, 8th Dist. No. 78682, 2001 WL 1400012.  "A stipulation of proof renders proof unnecessary" and "where parties choose to stipulate facts in lieu of presenting evidence they waive any error that may have occurred with respect to the fact that the trial court decided without hearing evidence presented by the parties."  *Id.*

**{¶68}**  Counsel for Wife stated the following during the hearing, "your Honor there's a stipulation as to Exhibit E which is a contract annuity #050 – that's going to be considered marital, um, a marital asset, subject to equal division."  Accordingly, we find the trial court did not abuse its discretion in accepting Wife's stipulation on the issue. *Gearhart v. Gearhart*, 5th Dist. Richland No. 2007CA0026, 2008-Ohio-23.

{¶69} Wife additionally argues the document she located is "newly-discovered evidence." However, Wife admitted that the document was in her possession at the time the parties stipulated to the annuity being a marital asset, subject to equal division. As noted by the trial court, both parties had ample opportunity to prepare for trial. Wife did not demonstrate the evidence was newly-discovered or could not have been discovered with reasonable diligence prior to trial. *Corbett v. Corbett*, 5th Dist. Coshocton Nos. 98-CA-16, 98-CA-19, 1999 WL 436727 (June 1, 1999) (finding the trial court did not abuse its discretion in denying motion for new trial when party attempted to introduce new and different evidence about the valuation of appellee's pension when the appellant did not demonstrate the evidence was newly discovered and could not have been discovered with reasonable diligence.)

{¶70} The trial court denied Wife's motion to re-open based upon a combination of two factors: (1) Wife's failure to find the document in her possession and (2) Wife's stipulation during the hearing that the asset at issue is martial, subject to equal division. We find no abuse of discretion in the trial court's denial of the motion based upon these two factors.

{¶71} Wife's third assignment of error is overruled.

IV.

{¶72} In Wife's fourth assignment of error, she contends the trial court committed error in finding her in contempt of court. The trial court found Wife in contempt for failing to comply with the court's order to deposit her paycheck into the parties' joint checking account.

{¶73} "A court has authority both under R.C. 2705.02(A) and on the basis of its inherent powers to punish the disobedience of its orders with contempt proceedings." *Zakany v. Zakany*, 9 Ohio St.3d 192, 459 N.E.2d 870 (1984). "The purpose of sanctions in a case of civil contempt is to compel the contemnor to comply with lawful orders of a court, and the fact that the contemnor acted innocently and not in intentional disregard of a court order is not a defense to a charge of civil contempt." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971). "It is irrelevant that the transgressing party does not intend to violate the court order. If the dictates of the judicial decree are not followed, a contempt citation will result." *Pedone v. Pedone*, 11 Ohio App.3d 164, 463 N.E.2d 656 (8th Dist. 1983). We review a contempt finding under an abuse of discretion standard. *Wadian v. Wadian*, 5th Dist. Stark No. 2007CA00125, 2008-Ohio-5009. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶74} In a civil contempt proceeding, the movant bears the initial burden of demonstrating by clear and convincing evidence that the other party violated an order of the court. *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 416 N.E.2d 610 (1980). "Clear and convincing evidence" is evidence that will form a firm belief in the mind of the trier of fact as to the facts sought to be established. *Cincinnati Bar Assn. v. Massengale*, 58 Ohio St.3d 121, 568 N.E.2d 1222 (1991). Determination of clear and convincing evidence is within the discretion of the trier of fact. *Id.* The trial court's decision should not be disturbed as against the manifest weight of the evidence if the decision is supported by some competent and credible evidence. *C.E. Morris Co. v. Foley Constr.*,

54 Ohio St.2d 279, 376 N.E.2d 578 (1978). A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. *Geary v. Geary*, 5th Dist. Delaware No. 14CAF050033, 2015-Ohio-259.

{¶75} On November 12, 2019, the magistrate issued a court order providing as follows, "all form of income from whatever source must be deposited in the parties' joint checking account within three (3) banking days of receipt of the check, direct deposit, cash, or any other form of income."

{¶76} The record shows Husband met his burden of demonstrating, by clear and convincing evidence, that Wife violated the November 12, 2019 order of the court. Wife admitted she did not deposit her paycheck into the parties' joint account. Additionally, Husband confirmed that there was a period of time when Wife would transfer her paycheck into the joint checking account pursuant to the temporary orders. However, Husband stated Wife stopped putting her paychecks into the joint account. The trial court, as the trier of fact, "is the sole judge of the weight of the evidence and the credibility of the witnesses." *McKay Machine Co. v. Rodman*, 11 Ohio St.2d 77, 228 N.E.2d 304 (1967).

{¶77} Wife contends the trial court committed error in finding her in contempt because there was no harm to Husband. However, as detailed above, there is no requirement that Husband show he was harmed by Wife's non-compliance with the court order, and it is irrelevant if Wife did not intend to violate the court order. Additionally, as noted by the trial court, Husband was unable to see what funds were coming in and going

out for marital expenses and bills because Wife was not depositing her income into the joint account.

{¶78} We find the trial court did not abuse its discretion in finding Wife in contempt. We do not find the trial court's decision to be arbitrary, unreasonable, or unconscionable. Wife's fourth assignment of error is overruled.

{¶79} Based on the foregoing, Wife's assignments of errors are overruled.

{¶80} The April 7, 2021 judgment entry of the Stark County Court of Common Pleas, Domestic Relations Division, is affirmed.

By Gwin, P.J.,

Wise, John, J., and

Wise, Earle, J., concur